Rel: July 12, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

_____

### CL-2023-0795

_____

**Alabama Board of Heating, Air Conditioning, and Refrigeration Contractors**

**v.**

**Elijah Blanchard**

**Appeal from Jefferson Circuit Court**
**(CV-20-901357)**

HANSON, Judge.

The Alabama Board of Heating, Air Conditioning, and Refrigeration Contractors ("the Board") appeals from a judgment entered by the Jefferson Circuit Court ("the circuit court").  In that judgment, the circuit court overturned decisions of the Board revoking Elijah

Blanchard's certification to operate as a heating and air-conditioning contractor.

## I.  Facts and Procedural History

Blanchard was issued a license by the Board to operate as a heating and air-conditioning contractor.  In 2017, Blanchard was disciplined by the Board for improper work on a customer's heating and air-conditioning system and was subjected to sanctions including a fine and mandatory attendance of a remedial class. Subsequently, Blanchard had two cases before the Board, resulting in the cases before the circuit court: case number CV-20-901357 and case number CV-22-903693.

### A.  Case Number CV-20-901357

On March 21, 2019, Stephen Gatti filed a consumer complaint with the Board, alleging that A & E Service Company, which was operated by Blanchard, had improperly installed a heating, ventilation, and air-conditioning ("HVAC") system.  Specifically, Gatti alleged:

> "A & E Service Company was sent by a[n] American home warranty company to make repairs.  The owner, Elijah [Blanchard], stated that I needed to replace my unit.  He helped me get in the Alabama Power Company financing program.  He improperly installed the unit, and it caused a new energy efficient unit to perform worse than a 30-year-old unit.  Alabama Power sent two experts to conduct an installation inspection and it failed inspection by both

experts. I've given the company multiple attempts to correct things, but they have not. The company conducted work during non-business hours, 7 p.m.- 9:30 p.m., and in many cases failed to show up for appointments. Alabama Power has the contract, payment information, and reports of increased power usage. They may also be able to provide the findings of their expert inspections."

On April 12, 2019, Matthew Feld filed a consumer complaint with the Board, alleging the following:

"I referred and hired Elijah [Blanchard] to my homebuilder who we have worked with on other projects. [Blanchard] was hired to do a complete system for a full remodel. After the last bit of work he did and the lack of professionalism by his staff, I decided to call my previous HVAC [company] if I had issues. The [air conditioning] quit working last week and I placed a service call with Brown Heating and Cooling. Their [technician] arrived and was here for several hours documenting and identifying multiple issues on our 'fully new system.' After inspection, the owner of Brown Heating and Cooling called me and advised based on the amount of issues and the fact this system was just installed my best course of action was to file a complaint as there are several thousand dollar[s'] worth of 'redo' work that needs to be done to bring this system up to code and as it should be for the almost [$10,000] we paid for it. A few of the issues -- duct work not up to code, unit not fully sealed with duct work, coolant leaks already due to the wrong size piping, electrical wiring not up to code."

3

On September 10, 2019, the Board issued a summons and administrative complaint[1] outlining deficiencies in Blanchard's or his employees' work on the two consumers' HVAC systems. The administrative complaint alleged that Blanchard had violated § 34-31-18 et seq., Ala. Code 1975, and Chapter 440-X-5 of the Alabama Administrative Code (Heating, Air Conditioning, and Refrigeration Contractors Board) ("HACR"). The administrative complaint set forth with specificity the "life safety" violations and "minimum standard" violations that Blanchard was alleged to have violated.[2]

---

[1]An administrative complaint is defined under the Alabama Administrative Code (Heating, Air Conditioning, and Refrigeration Contractors Board), r. 440-X-6-.01(3) as "[a] legal document which contains notice of the time and place of an administrative hearing; contains a statement of the charges against the certified contractor; and complies with the notice provisions for contested cases as set forth in the Alabama Administrative Procedure[] Act[, §41-22-1 et seq., Ala. Code 1975]."

[2]"Minimum standard" is defined under r. 440-X-5-.01(1), Ala. Admin. Code (HACR), as "[t]he basic or minimum requirements allowable by the Board as it pertains to the installation, service, and repair of residential and commercial heating and air conditioning, and commercial refrigeration equipment."

Neither §§ 34-31-18 through 34-31-35, Ala. Code 1975, nor the Board's administrative regulations, rr. 440-X-1 through 440-X-6, Ala. Admin. Code (HACR), contain a definition of "life safety." When a term is not defined in a statute, the commonly accepted definition of the term

4

At the hearing on October 16, 2019, the Board's investigators testified regarding 6 life-safety violations and 8 minimum-standard violations from Blanchard's HVAC installation at Gatti's house, and 6 life-safety violations and 25 minimum-standard violations from Blanchard's HVAC installation at Feld's house.

Blanchard testified that he had been served with the summons and administrative complaint pertaining to the Gatti HVAC installation. Blanchard said that his senior technician had performed the work at the Gatti installation. Blanchard admitted that the technician had not properly installed the HVAC system. Blanchard said that after Gatti had called him to complain, he had sent the technician back to Gatti's house to make repairs. After Gatti had contacted Alabama Power to complain, Blanchard said, he returned to Gatti's house. Gatti would not allow Blanchard to fix the problems with the system. Subsequently, Blanchard said, he realized that the technician had had a drug problem, and he terminated the technician's employment. Blanchard presented evidence that the technician had also stolen Blanchard's work van.

---

should be applied. Ex parte City of Millbrook, 304 So. 3d 202, 206 (Ala. 2010). Applying this general rule of construction to "life safety," those violations would include violations posing a risk of life or public safety.

Blanchard testified that he had been served with the summons and administrative complaint pertaining to the Feld HVAC installation. He said that Feld had never contacted him regarding problems with the HVAC installation. Blanchard said that Feld had contacted him when the underside of Feld's house had flooded in January 2019. Blanchard said that he had gone underneath the house and that the furnace had been in good condition. Blanchard said that he had sent his technician to rewrap the ductwork that had been damaged by the flood. Blanchard acknowledged that this had been the same technician that he later fired.

During his testimony, Blanchard discussed each of the life-safety and minimum-standard violation allegations. Blanchard admitted to some of the allegations and denied others.

On February 10, 2020, the hearing officer found that Blanchard had committed 12 life-safety violations and 33 minimum-standard violations as outlined in the administrative complaint. The hearing officer's recommendation provided, in pertinent part, as follows:

> "Blanchard appeared at the hearing and testified. Blanchard admitted nine life safety violations and 19 minimum standard violations between the two jobs Blanchard argued that the work on the Gatti job was performed by [the technician] who had a drug problem. Therefore, Blanchard argued he should not be held

6

accountable because [the technician's] drug use was unforeseen. Blanchard also argued that many of the violations on the Feld job occurred as a result of other workers going under Feld's house after a flood who caused or created the violations while they performed other repairs.

"HACR Administrative Code Section 440-X-3-.09 clearly states, in pertinent part:

"'The person in responsible charge must direct the projects involving the installation or service and repair of heating, air conditioning or refrigeration systems under Alabama law. The person in responsible charge must be a full-time employee, owner, partner, or corporate officer of the partnership, corporation, business trust, or other legal entity. This person in responsible charge must possess the requisite skill, knowledge, and experience and have the responsibility to supervise, direct, manage, and control the installation, service, or repair activities of the business entity with which he is affiliated. The Board shall examine the technical and personal qualifications of the person in responsible charge and may investigate and/or examine that person's qualifications.'

"Blanchard testified he was the person in responsible charge for both job sites and he also testified he understood that as the person in charge, he was liable for any violations found on work performed under his license.

"Blanchard described [the technician] as a seasonal worker but also called him one of his best technicians. [The technician] performed the work on the Gatti house in October 2018. There is no evidence [the technician] was using drugs on or around October 2018. Blanchard relied on the testimony of another employee who was on the Gatti job site with [the

7

technician] who described [the technician] as 'agitated' and acting like he did not want to be there. Those two descriptions are insufficient to prove [the technician] was using drugs or under the influence of drugs during October 2018.[51] Blanchard did not know of [the technician's] alleged drug problem until August 2019 after [the technician] stole one of Blanchard's work vans and a police officer told him [the technician] had a history. Blanchard did not go out to the Gatti home and review or supervise [the technician's] work in October 2018. Blanchard allowed [the technician] to work by himself or with another employee. After reviewing the Gatti complaint and reviewing the pictures, Blanchard admitted the work was not up to Blanchard's standards. Furthermore, Blanchard admitted three life safety violations and 11 minimum standard violations on the Feld home. Blanchard maintained other workers from other disciplines created the violations Spivey [the Board's investigator] found after they worked under the home following a flood. Blanchard testified he went under Feld's home after the flood just to inspect the furnace but did not review all the work. Regardless, Blanchard failed to identify the other workers from the other disciplines who went under the home and provide any credible evidence to refute Spivey's findings.

"Counsel for the Board recommended revocation of Blanchard's certification. Based upon the totality of the evidence and considering the number of life safety violations as well as the number of minimum standard violations between the two job sites and his prior discipline with HACR, the facts warrant a severe punishment. The undersigned has carefully considered all the evidence in this case. Blanchard's violations support revocation of his license pursuant to ALA. CODE [1975,] § 34-31-32(b) (1975). The undersigned recommends to the Board that Blanchard's certification be REVOKED."

_____

"[51]Blanchard appealed to an exception under Respondeat Superior, unforeseen acts of an employee. <u>Black's Law Dictionary</u> defines Respondent Superior as a Latin phrase literally meaning 'let the superior make answer.' Blanchard contended Best used drugs and, therefore, performed work outside the scope of his employment. The evidence did not support Blanchard's defense. It appears highly likely that [the technician] was under the influence during his work in Tuscaloosa in August 2019, but there are not similar facts to support the October 2018 work period and one cannot justly conclude that [the technician] may have been using drugs in October 2018 because his behavior was so bad in August 2019. What is most egregious is Blanchard's failure to review [the technician's] work on the Gatti home."

On March 11, 2020, the Board entered an order adopting the hearing officer's recommendation to revoke Blanchard's license and attaching a copy of that recommendation to its order. The Board's order also stated that, "Blanchard of A & E Service Company is guilty of violating Section 34-31-21, Code of Alabama 1975."[3] On April 9, 2020, Blanchard filed an appeal of the Board's revocation order with the circuit court.

_____

[3]Section 34-31-21, Ala. Code 1975, concerns the officers, meetings, powers, and duties of the Board.

## B. Case Number CV-22-903693

On May 27, 2021, Naomi Oden filed a consumer complaint with the Board alleging that A & E Service Company had improperly installed an HVAC system in her house, which system had cost $12,185.04. Specifically, Oden alleged:

> "Since May 2020, I have dealt with lies, missed appointments, unanswered texts, and a failed HVAC system. Poor workmanship led to [an] improperly installed system which froze over and continues to freeze, resulting in water damage and mold in my home. A & E is well aware. As of this day, May 27, 2021, I still do not have a functioning system. Blanchard told me I needed to purchase a new larger system in order to have heat and [air conditioning] in my bedroom. At his urging, I purchased a larger system and had it financed by Alabama Power, again at his urging. This turned out to be false. The attached does give proof and detail."

Oden attached numerous text messages and other information regarding the inoperable HVAC system and Blanchard's failure to respond or repair the system.

On September 22, 2022, the Board issued a summons and administrative complaint alleging that Blanchard had violated § 34-31-18 et seq., Ala. Code 1975, and Chapter 440-X-5 of the Alabama Administrative Code (HACR). The administrative complaint contained minimum-standard violations allegedly violated by Blanchard in

10

installing Oden's HVAC system.

At the administrative hearing on October 12, 2022, the Board's investigator testified that Oden's HVAC system had not been working when he inspected it on July 20, 2021. The investigator testified regarding three minimum-standard violations found during his first inspection. The investigator said that when he inspected Oden's HVAC system again on October 7, 2021, the HVAC system was working.

Blanchard testified that he had 30 years of experience and that he believed that he had installed approximately 15,000 HVAC units during his career. He said that he had been unable to remedy duct-work problems in Oden's HVAC system because she would not allow him to address the issue. Blanchard admitted that his bond company and insurance company had paid $20,000 to Oden for his improper work. The record of Blanchard's 2017 disciplinary action and the revocation order entered in 2020 were admitted into evidence.

On November 8, 2022, the hearing officer found that Blanchard had committed three minimum-standard violations as outlined in the administrative complaint. The hearing officer's recommendation provided, in pertinent part, as follows:

11

"Blanchard appeared at the hearing and testified. Substantial evidence proved Blanchard committed three minimum standard violations on the Oden installation.

"HACR Administrative Code Section 440-X-3-.09 states, in pertinent part:

"'(1) The person in responsible charge must direct the projects involving the installation or service and repair of heating, air conditioning or refrigeration systems under Alabama law. The person in responsible charge must be a full-time employee, owner, partner, or corporate officer of the partnership, corporation, business trust, or other legal entity. This person in responsible charge must possess the requisite skill, knowledge, and experience and have the responsibility to supervise, direct, manage, and control the installation, service, or repair activities of the business entity with which he is affiliated. The Board shall examine the technical and personal qualifications of the person in responsible charge and may investigate and/or examine that person's qualifications.

"...

"'(3) The certified contractor is responsible for all electrical and gas piping work related to HVAC equipment performed on residential property or HVAC and/or refrigeration equipment on commercial property, and is considered by the Board as the person in responsible charge for such work should the work fail to meet the minimum standards under these rules.'

"Blanchard was the person in responsible charge for the Oden job and he acknowledged that as the person in charge,

12

he was liable for any violations found on work performed under his license. Counsel for the Board recommended revocation of Blanchard's certification.

"Counsel for the Board argued that Blanchard's repeated conduct is grounds for such a discipline. Blanchard has had four consumer complaints filed against him since 2017 and in at least two cases he was not responsive or failed to show up when the complainants attempted to get him to come fix their problems. This most recent complaint came after the Board recommended Blanchard's certification be revoked.

"Counsel for Blanchard argued the Board's March 11, 2020, Order to revoke Blanchard's certification, cannot be considered since it has been appealed to Circuit Court. Counsel for Blanchard also argued that Blanchard was charged with three minimum standard violations and by themselves would not warrant revocation of certification.

"The purpose of the Board is outlined in Ala. Code § 34-31-19, '...to certify qualified contractors on a state-wide basis in order to protect the public…' The penalties for violations are outlined in Ala. Code [1975,] § 34-31-32(b) and Administrative Rules and Regulations § 440-X-6-.08. The Administrative rules state, in pertinent part:

> "'(1) Based upon the evidence presented at the administrative hearing or pursuant to informal disposition, the Board may take one or more of the following actions.
>
> "'…
>
> " '(c) Find the respondent guilty of any or all the violations alleged in the administrative complaint. If the Board finds the Respondent guilty of one or more of the violations alleged in the

13

administrative complaint, the Board may take one or more of the following disciplinary actions against the respondent:

"'1. Reprimand the Respondent.

"'2. Require additional continuing education hours.

"'3. Suspend the respondent's certification.

"'4. Revoke the respondent's certification.

"'5. Levy a fine not to exceed $2,000.00 per violation.'

"The undersigned has carefully considered all the evidence in this case. Blanchard has previously been subjected to discipline by the Board, including an administrative fine, mandatory classes, and revocation of his certification. Blanchard continues to engage in substandard work. Blanchard's violations in this matter, along with his prior discipline, support revocation of his license pursuant to Ala. Code 1975 § 34-31-32(b) (1975). The undersigned recommends to the Board that Blanchard's certification be revoked."

On November 17, 2022, the Board adopted the hearing officer's recommendation to revoke Blanchard's license and attached a copy of that recommendation to its order. The Board's order also stated,

14

"Blanchard is guilty of violating Section 34-31-21, Code of Alabama 1975." On December 9, 2022, Blanchard filed a notice of appeal with the circuit court.

### C. Appeals to Circuit Court

Blanchard's appeals in case CV-20-901357 and case CV-22-903693 were consolidated by the circuit court. The parties filed briefs in both appeals. In his appeal in case CV-20-901357, Blanchard argued that the Board's order revoking his license was an abuse of discretion because he satisfied his obligations to the consumers' complaints through full payment to Gatti and Feld pursuant to Blanchard's insurance bond. With regard to case CV-22-903693, Blanchard argued that the minimum-standard violations found in his installation of Oden's HVAC system did not support a revocation of his license.

Following a hearing, the circuit court entered an order on July 20, 2023, requiring the Board

"to file with this Court a complete record of all complaints made against any and all person(s) and or entities who were issued, hold or held a Certification from the [Board] together with the dispositions of each and every complaint for the time period between January 1, 2016 and January 1, 2023. These documents may be filed under seal."

15

The Board filed a motion to reconsider, which was denied. On August 25, 2023, the Board timely filed a mandamus petition with this court challenging the discovery order.

On October 18, 2023, the circuit court entered a final judgment setting aside both of the Board's orders revoking Blanchard's license. The judgment provided:

"The above styled consolidated causes of action came before this Court on Appeal for Trial De Novo following adverse judgments issued by the State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors, revoking Elijah Blanchard's certification to engage in the heating and air conditioning and refrigeration services business in the State of Alabama. Upon full and fair consideration of the record on appeal and all of the pleadings since filed, the Court finds that the judgments by the State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors, revoking Elijah Blanchard's certification to engage in the heating and air conditioning and refrigeration services business in the State of Alabama violated Mr. Blanchard's Fourteenth Amendment Constitutional Rights. To wit:

"The State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors' application of Alabama Code [1975,] Section 34-31-21 to Mr. Blanchard is an incorrect and improper application of that particular statute Alabama Code [1975,] Section 34-31-21 deals with the Board of Heating, Air Conditioning, and Refrigeration Contractors Officers: meetings: powers and duties. This section delineates what the 'Board' is authorized to do. There is no rational basis upon which to allege that Mr. Blanchard could have violated Alabama Code [1975,] Section 34-31-21.

16

"Wherefore, it is hereby ordered, adjudged and decreed that the order of the State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors revoking Elijah Blanchard's certification to engage in the heating and air conditioning services in the State of Alabama issued on March 11, 2020, is hereby set aside, and declared null and void, having no legal force or effect.

"And

"Wherefore, it is hereby ordered, adjudged and decreed that the order of the State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors revoking Elijah Blanchard's certification to engage in the heating and air conditioning services in the State of Alabama issued on November 17, 2022, is hereby set aside, and declared null and void, having no legal force or effect."

On October 19, 2023, the Board filed a motion to dismiss its mandamus petition, which this court granted. On November 8, 2023, the Board filed a notice of appeal.[4]

---

[4]Rule 4(a)(3), Ala. R. App. P., provides "[a]ny error or ground of reversal or modification of a judgment or order which was asserted in the trial court may be asserted on appeal without regard to whether such error or ground has been raised by motion in the trial court under Rule 52(b) or Rule 59 of the [Ala. R. Civ. P.]" The Committee Comments to Rule 4(a), Ala. R. App. P., explain:

"The provision of subdivision (a)(3) in the last sentence permitting assertion in the appellate court of any matter raised or asserted in the trial court whether such matter was raised by motion for new trial under [Ala. R. Civ. P.] Rule 59 or for motion of amendment of findings of fact under [Ala. R.

17

## II. Analysis

The Board argues that the circuit court improperly found that the orders revoking Blanchard's license were null and void due to the citation of an incorrect code section when (1) Blanchard had notice, prior to the hearings, of the statute he was alleged to have violated, and (2) the Board's orders adopted the hearing officer's recommendations which set out in detail Blanchard's violations.

---

Civ. P.] Rule 52(b) is a departure from existing Alabama practice. The rule does not, however, extend the right to raise for the first time on appeal new matter not presented to the trial court or upon which the trial court had no opportunity to pass.

"The requirement retains the practice that matters raised on appeal must have been presented to the trial court at some stage. Thus matters which can only be raised by post-trial motion must be so asserted. The provision is intended to avoid the necessity of repeated assertions of the same point below. Once ruled on by the trial court in some form, the point is preserved for review on appeal."

Here, the circuit court, acting in its limited role in reviewing appeals from an administrative agency, concluded that the Board's orders were null and void. The Board's appeal of the circuit court's judgment is properly before this court without the need of a postjudgment motion.

The Board, as a state agency, has only those powers conferred upon it by the legislature. Hinkle Metals & Supply Co. v. Ohio Cas. Ins. Co., 909 So. 2d 843, 845 (Ala. Civ. App. 2005). As a state agency, the Board is subject to the Alabama Administrative Procedure Act ("the AAPA"), § 41-22-1 et seq., Ala. Code 1975. See § 34-31-34, Ala. Code 1975; r. 440-X-6-.08(4), Ala. Admin. Code (HACR).

Section 41-22-20(k), Ala. Code 1975, of the AAPA provides:

> "(k) Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
>
> > "(1) In violation of constitutional or statutory provisions;
> >
> > "(2) In excess of the statutory authority of the agency;
> >
> > "(3) In violation of any pertinent agency rule;

19

"(4) Made upon unlawful procedure;

"(5) Affected by other error of law;

"(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

"(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."

In Alabama Department of Mental Health v. Nobles Group Homes, Inc., 343 So. 3d 1140, 1145 (Ala. Civ. App. 2021), this court stated:

"Section 41-22-21 provides that the judgment of a circuit court reviewing an agency's action under the AAPA is subject to appeal to the appropriate court, which, in this case, is this court. This court reviews the circuit court's judgment without any presumption of correctness. See Colonial Mgmt. Grp., L.P. v. State Health Plan. & Dev. Agency, 853 So. 2d 972, 974 (Ala. Civ. App. 2002). Further, '[n]either this court nor the [circuit] court may substitute its judgment for that of the administrative agency.' Id. at 975."

In support of its position that the circuit court should have treated the incorrect citation as harmless error, the Board cites Vining v. Board of Dental Examiners of Alabama, 492 So. 2d 607 (Ala. Civ. App. 1985). In Vining, the licensee had argued that the Board of Dental Examiners' order was defective because it did not show that the order was approved by at least a majority of the board and was not under that board's official

20

seal. This court held, as to the majority-vote contention, that the appellate courts must presume that the proceedings below were correctly held unless the contrary appears in the record and that the licensee had not met that burden. This court held that the absence of an official seal on the board's order was not a denial of due process and, if anything, was a harmless error.

The Board also cites <u>Royer v. State</u>, 542 So. 2d 1301 (Ala. Crim. App. 1988), wherein the Alabama Court of Criminal Appeals upheld the defendant's conviction for driving under the influence of alcohol where the defendant was properly charged under the Uniform Traffic Ticket despite the ticket referencing an incorrect code citation. The Court of Criminal Appeals held that the incorrect citation of a code section did not void an indictment which otherwise stated an offense, and, in the absence of a showing of actual prejudice to the defendant, the reference to the incorrect code section should be treated as mere surplusage.

In the present case, the circuit court had subject-matter jurisdiction over Blanchard's appeals from the Board's orders revoking his license. § 41-22-20, Ala. Code 1975. The Board's orders cited to § 34-31-21, Ala. Code 1975. Section 34-31-21 concerns the officers, meetings, powers, and

21

duties of the Board. Clearly, the Board could not revoke Blanchard's license based on § 34-31-21, which the circuit court recognized as well. Nevertheless, the Board's administrative complaints set forth the life-safety violations and minimum-standard violations in Blanchard's or his employees' work on the three consumers' HVAC systems. Blanchard had notice of the hearings on the administrative complaints and testified at the hearings on his own behalf. The Board's orders revoking Blanchard's license adopted the hearing officer's findings and recommendations in their entirety. The citation to § 34-31-21 in the Board's orders was harmless error. See Rule 61, Ala. R. Civ. P. ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). "An agency decision is harmless 'when a mistake of the administrative body is one that clearly had no

bearing on the procedure used or the substance of decision reached.'" Animal Legal Def. Fund v. United States Dep't of Agric., 789 F.3d 1206, 1224 n.13 (11th Cir. 2015) (quoting U.S. Steel Corp. v. United States Env't Prot. Agency, 595 F.2d 207, 215 (5th Cir. 1979) (construing the federal Administrative Procedure Act)). Accordingly, the circuit court erred in concluding that the Board's orders were null and void due to the citation to § 34-31-21.

We reverse the circuit court's judgment and remand for entry of a judgment or for further proceedings pursuant to the AAPA.[5]

REVERSED AND REMANDED.

Edwards and Fridy, JJ., concur in the result, without opinions.

Lewis, J., dissents, with opinion, which Moore, P.J., joins.

---

[5]We pretermit discussion of the Board's arguments that the circuit court failed to give the Board's orders revoking Blanchard's license a presumption of correctness and that there was overwhelming evidence that Blanchard had committed life-safety violations and minimum-standard violations.

LEWIS, Judge, dissenting.

I respectfully dissent from the main opinion's reversal of the judgment of the Jefferson Circuit Court ("the circuit court").

In this case, the circuit court's final judgment provided:

"The above styled consolidated causes of action came before this Court on Appeal for Trial De Novo following adverse judgments issued by the State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors, revoking Elijah Blanchard's certification to engage in the heating and air conditioning and refrigeration services business in the State of Alabama. Upon full and fair consideration of the record on appeal and all of the pleadings since filed, the Court finds that the judgments by the State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors, revoking Elijah Blanchard's certification to engage in the heating and air conditioning and refrigeration services business in the State of Alabama violated Mr. Blanchard's Fourteenth Amendment Constitutional Rights. To wit:

"The State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors' application of Alabama Code [1975,] Section 34-31-21 to Mr. Blanchard is an incorrect and improper application of that particular statute. Alabama Code [1975,] Section 34-31-21 deals with the Board of Heating, Air Conditioning, and Refrigeration Contractors Officers: meetings: powers and duties. This section delineates what the 'Board' is authorized to do. There is no rational basis upon which to allege that Mr. Blanchard could have violated Alabama Code Section 34-31-21.

"Wherefore, it is hereby ordered, adjudged and decreed that the order of the State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors revoking Elijah

24

Blanchard's certification to engage in the heating and air conditioning services in the State of Alabama issued on March 11, 2020, is hereby set aside, and declared null and void, having no legal force or effect.

"And

"Wherefore, it is hereby ordered, adjudged and decreed that the order of the State of Alabama Board of Heating, Air Conditioning and Refrigeration Contractors revoking Elijah Blanchard's certification to engage in the heating and air conditioning services in the State of Alabama issued on November 17, 2022, is hereby set aside, and declared null and void, having no legal force or effect."

The Alabama Board of Heating, Air Conditioning, and Refrigeration Contractors ("the Board"), without filing a postjudgment motion challenging that judgment, appealed to this court.

On appeal, the Board raises the following issues: (1) "[w]hether mistyping the correct code section on the … Board's final order to revoke [Elijah] Blanchard's license, appropriately allowed the Circuit Court to determine the Board's Orders of revocation were null and void" and (2) "[w]hether the Circuit Court improperly substituted her judgment for that of the administrative board responsible for overseeing licenses for heating and air conditioning systems."

The main opinion reverses the circuit court's judgment with respect to the first issue. The resolution of that issue hinges on the main

25

opinion's acceptance of the Board's argument that the circuit court erred in setting aside the Board's order because, the Board says, its reliance on the wrong code section was harmless error and, therefore, Blanchard was not deprived of his due-process rights. However, I note that the Board has raised its argument regarding harmless error for the first time on appeal. "This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992); see also J.M.L. v. Tuscaloosa Cnty. Dep't of Hum. Res., [Ms. CL-2023-0765, Apr. 26, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024) (holding that issues regarding due process must be preserved for review); see also Stowe v. Alabama Bd. of Pardons and Paroles, 245 So. 3d 610, 616 (Ala. Civ. App. 2017) (holding that, because Michael Stowe failed to raise his argument "that he was not aware of the proposed order submitted to the trial court by the Board [of Pardons and Paroles]" in the circuit court, that argument was waived); and Black Bear Sols. v. State Dep't of Ed., 330 So. 3d 840, 848 (Ala. Civ. App. 2021) (holding that an argument was waived when "Black Bear failed to [make that argument] before the trial court or to the Department [of Education.])"

26

In <u>Shiver v. Butler County Board of Education</u>, 797 So. 2d 1086, 1088-89 (Ala. Civ. App. 2000), this court, quoting <u>Head v. Triangle Constr. Co.</u>, 274 Ala. 519, 522, 150 So. 2d 389, 392 (1963), explained:

> " 'The general rule is that the appellate court will review only questions that are raised by the record. This rule is premised on the doctrine that the trial court should first have the opportunity to rule on all points. The duty of an appellate court is to review the action of the lower court to ascertain whether or not error was committed; it is not to entertain any issue whatsoever that parties wish to raise. All reviewable matters stem solely from the record. … And it has been stated by this court that it would review a case only on the same theory that was presented to the trial court. …' "

As the main opinion points out,

> "Rule 4(a)(3), Ala. R. App. P., provides '[a]ny error or ground of reversal or modification of a judgment or order <u>which was asserted in the trial court</u> may be asserted on appeal without regard to whether such error or ground has been raised by motion in the trial court under Rule 52(b) or Rule 59 of the [Ala. R. Civ. P.]' "

___ So. 3d at ___ n.4. (Emphasis added). Moreover, the Committee Comments to Rule explain, in pertinent part:

> "<u>The rule does not … extend the right to raise for the first time on appeal new matter not presented to the trial court or upon which the trial court had no opportunity to pass</u>.

> "The requirement retains the practice that <u>matters raised on appeal must have been presented to the trial court at some stage</u>. Thus matters which can only be raised by post-trial motion must be so asserted. The provision is intended to

27

> avoid the necessity of repeated assertions of the same point below. Once ruled on by the trial court in some form, the point is preserved for review on appeal."

(Emphasis added).

In Shiver v. Butler County Board of Education, at the trial-court level, Eustice Shiver had failed to deny that the 10-year statute of limitations set forth in § 6-2-38(m), Ala. Code 1975, was applicable, and he had failed to "assert a counterargument regarding the 10-year statute of limitations in § 6-2-33(3)[, Ala. Code 1975]." 797 So. 2d at 1089. The trial court "held that § 6-2-38(m) was the applicable statute of limitations." Id. Shiver, without filing a postjudgment motion, appealed to this court. On appeal, Shiver "argue[d] that the trial court erred in holding the applicable statute of limitations to be § 6-2-38(m), Ala. Code 1975, rather than § 6-2-33(3)." Id. at 1088. This court held that Shiver had failed to make that argument to the trial court and, therefore, the argument was not preserved for this court's review.

In this case, the judgment states that that the circuit court held a trial de novo; however, another order in the record, as well as the Board's brief, indicate that the circuit court actually held an oral argument, not a trial, on June 8, 2023. The Board chose not to order a transcript of the

28

June 8, 2023, hearing. Therefore, this court does not have the benefit of knowing whether the Board's argument was raised at that hearing. An appellant "ha[s] the burden of supplying this court with a correct and complete record on appeal." Alabama Dep't of Env't Mgmt. v. James, 745 So. 2d 276, 278 (Ala. Civ. App. 1999). In Ex parte Howell, 974 So. 2d 304, 306 (Ala. 2007), our supreme court held that, when an appellant failed to provide the court with a complete record, the supreme court was "unable to determine whether [the appellant's] contentions … were made for the first time on appeal." The supreme court explained that it could not assume that the appellant's arguments on appeal had been presented to the circuit court.

Similarly, in the present case, the record does not indicate that the Board "asserted in the [circuit] court" that the citation to the incorrect code section was harmless error such that no due-process violation had occurred. Because we do not have a transcript of the June 8, 2023, hearing, we may not presume that the Board raised its harmless-error argument during the hearing. Since the record does not affirmatively show that the Board's first argument was preserved for this court's review, I would affirm the circuit court's judgment on that point.

With respect to the second issue raised by the Board, I note that there is no indication that the circuit court "substituted [its] judgment" for the Board's judgment. Instead, the circuit court's judgment specifically and solely relied on the "incorrect and improper application of … Alabama Code [1975,] Section 34-31-21." Therefore, I cannot conclude that the circuit court's judgment is due to be reversed with respect to the Board's second argument.

Based on the foregoing, I would affirm the circuit court's judgment. Because the main opinion reverses the trial court's judgment, I respectfully dissent.

Moore, P.J., concurs.